even the purchaser to see to it that the consideration was applied to the purposes of the trust, much less was it incumbent upon this company to inquire as to whether or not the executors were doing their duty with reference to the consideration when they made the transfer. When a proper formal assignment from them was presented to the insurance company, and there were no facts to create suspicion and so put it upon inquiry, it had a right to rely upon the legality of that document, and the executors and all persons represented by them are estopped from questioning it to the prejudice of the insurance company. The plaintiff, therefore, can get no relief as against that company, unless she can cancel the second policy. It is not claimed by the insurance company that it will be prejudiced by reinstating the first policy if the second is canceled. If no consideration was paid for the assignment from the executors, their assignee cannot hold the second policy as against their successor. Does the bank stand in any better position than she does? There was nothing to put the bank upon inquiry as to the character of the title of its assignor. That she had title is, of course, not questioned. The plaintiff claims the right to set that title aside because of the fraud on the estate in transferring the policy, as she claims, without a consideration. This she cannot do against one who acquired the property bona fide from the owner. In Voorhis v. Olmstead, 66 N. Y. 116, the New York Warehouse & Security Company, one of the defendants, loaned money to Biddle & Co. upon their agreement to deliver as security warehouse receipts for cotton, for which they had contracted, but which they did not then own. Thereafter the receipts were delivered. Biddle & Co. had not in fact acquired a valid title to the cotton, and became insolvent in a few days. It was held that the pledgee could not support its lien against the real owner, because, "had not the company obtained the warehouse receipts they might have resorted to some process for the recovery of their loan or other indemnity against the loss. It was not necessary, in the present instance, for the pledgee of the property to show that a demand of the money loaned would certainly have resulted in its recovery. It is enough that its position was altered by relying on the evidence of title furnished to Biddle & Co. by the plaintiffs and abstaining from action." It has often been held that an extension of the term of credit upon a past-due debt is a good consideration to support a new contract. I am of the opinion that the bank has a right to hold the policy. The complaint should be dismissed upon the merits.

Argued before DWIGHT, P. J., and LEWIS and BRADLEY, JJ.

Scott & Reed, for appellant.

Joseph S. Hunn, for respondent Flour City Nat. Bank.

John R. Strang, for respondent Equitable Life Assurance Soc.

PER CURIAM.    Judgment affirmed, on opinion of YEOMAN, J., at special term.

---

EASTWOOD v. RETSOF MIN. CO.

(Supreme Court, General Term, Fifth Department. April 12, 1895.)

MASTER AND SERVANT—DUTY OF MASTER TO MAKE RULES.
      In an action for the death of plaintiff's intestate while in defendant's employ, it appeared that intestate was sent into a large salt bin to shovel the salt away from the mouth of the chute by which the salt ran into the bin. While intestate was so engaged, salt was drawn off from the bin at the bottom. Soon afterwards plaintiff's dead body came out with the salt. There was evidence that, if any one was in the bin when the salt was running out, and got into the salt above his knees, it was almost impossible for him to get out unassisted. *Held*, that it was a question for the jury whether defendant was negligent in not promulgating rules to govern persons engaged in shoveling salt in the bin.

Appeal from circuit court, Livingston county.

Action by John Eastwood, as administrator of Jay W. Eastwood, deceased, against the Retsof Mining Company. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Affirmed.

The opinion of Mr. Justice RUMSEY, at circuit, is as follows:

The plaintiff's intestate was a boy about 15 years old, and at the time of his death was in the employ of the defendant, in a room known as the "screening room." The business of the defendant was mining salt and preparing it for market. Just off the room in which the plaintiff's intestate was at work was a large bin, holding many tons of salt, into which the salt of a certain grade was delivered from the machinery of the works. At certain times when the bin became nearly full, it was necessary that some one should go into it for the purpose of freeing the mouth of the chute, through which the salt was delivered into the bin. To do this it was necessary to shovel away the salt which was accumulated at the mouth of the chute leading into the bin. When the bin became full, the salt was drawn off by three chutes in the bottom of it. The drawing off of the salt through these chutes caused the salt on the top to settle with more or less rapidity, depending entirely upon the manner in which it was drawn off. It appeared from the testimony, and was not disputed, that if one was in the bin at the time the salt was drawn off, and his feet became entangled in the salt which was running down to the lower chutes, it was very difficult for him to free himself; and if he got into the salt above his knees it was almost impossible for him to get out unassisted. The chutes through which the salt was delivered out of the bin were situated in a row along one side of it at the bottom. Hanging from the top of the bin were ropes, which one standing in the bin might seize if he was in danger of being engulfed in the salt, and thereby drag himself out. On two or three sides of the bin, and at a height at which it would be necessary for a man to stand in shoveling the salt, was a narrow platform of one plank, a foot or so wide, upon which a man might stand when he shoveled the salt away from the mouth of the chute. It appeared in the evidence, however, that the men who were engaged in shoveling in the bin were not accustomed to stand upon this plank, which was not in every respect convenient for that purpose, but stood upon the salt, and that there was no rule of the corporation forbidding them to do so if they saw fit. On the day on which the plaintiff's intestate met his death, so much salt was in the bin that the delivery from the chute into the bin was impeded by the accumulation of salt at its mouth; and the plaintiff's intestate, at his own request, was sent into the bin for the purpose of shoveling it away. It appears that he had never been there before for that purpose. He went into the bin, remained there for a few minutes, came out for some purpose, went back, and went to work. Shortly after he went back the second time, directions were given by the proper person that the salt should be drawn off from the bin, and one or more chutes at the bottom of the bin were opened for that purpose. After this had been going on for a few moments, the plaintiff's intestate was missed. Search was made for him, but he was nowhere to be found in the building. It was then surmised that perhaps he might have been engulfed in the salt, which was rapidly drawn off, and, after a large portion of the salt in the bin had been drawn off, the plaintiff's body made its appearance at one of the chutes, and he was taken out dead. The position in which the body appeared will be considered later. There was some dispute upon the evidence whether the bin was sufficiently light for a person inside to see conveniently about it. It appears upon the testimony offered by the plaintiff that the bin was quite dark, while the testimony of the defendant tended to show that one standing in the bottom of the bin, on an ordinarily clear day, could read ordinary handwriting without difficulty. In discussing the case, however, it must be assumed that the jury might have found the fact in this regard to be as claimed by the plaintiff. It is thought, however, that the fact itself is not of much importance. The foregoing are all the facts which it is thought necessary to advert to, or which were material upon the claim of negligence of the defendant.

It is claimed by the plaintiff that this negligence consisted in the failure to make rules on the part of the corporation which would regulate the drawing off of the salt when the men were in the bin, or which would provide for the safety of men who had occasion to be there when that process took place. The question was submitted to the jury whether the defendant was negligent in failing to provide rules upon that subject, which should protect the men who were in its employ. The defendant excepted to the submission of that question to the jury, but took no exception to the manner in which the submission was made. It is objected upon this motion that no such ground of negligence was stated in the pleadings, and for that reason it was improper to submit it to the jury. But no such position was taken upon the trial. The evidence upon that subject was admitted without objection, and it was not claimed at all during the trial that such evidence was not within the pleadings, or that the claim submitted was not properly presented by the complaint. It is settled that, when one seeks to enforce the rule that facts proven in the case are not available unless they are pleaded, he must take this position at the trial, and, if the objection to the proof of the facts is not put upon that precise ground at the trial, it cannot be taken advantage of at any later time. Voorhees v. Burchard, 55 N. Y. 98. In that case the facts which it was claimed were not pleaded were offered in evidence, but were objected to as immaterial. The referee overruled the objection, and received the facts, and the case was decided upon these facts. The defense proved by them was not pleaded in the answer. But nevertheless, upon an appeal, both the general term and the court of appeals held that the plaintiff could not avail himself of the point that the facts were not pleaded, unless he could put his objection to their admission upon the precise ground. In this case there was no objection to the proof of the facts which are now claimed as constituting negligence, and the defendant, having allowed them to be proved without objection, cannot now insist that they shall be discarded from the case.

There is no doubt of the rule that in an action for damages on account of negligence the negligence of the defendant must be proved, and that the jury, in the absence of proof, cannot be allowed to base its verdict upon any guess or inference that there was negligence on the part of the defendant which might have tended to do the mischief. Pauley v. Lantern Co., 131 N. Y. 90, 98, 29 N. E. 999. It is also the fact that ordinarily no presumption of negligence arises from the mere fact that an accident has occurred. Weston v. City of Troy, 139 N. Y. 281, 282, 34 N. E. 780. There is a class of cases, to be sure, in which the fact of negligence may be inferred from the mere happening of the accident, but the case at bar is not one of those. It cannot be said that the claim of negligence is to be decided in this case as a question of law simply because the material facts of the case are not disputed. The question of negligence is to be submitted to the jury, not only when the facts are disputed, but when the undisputed facts are such that reasonable men may draw different inferences from them upon the question involved. The court can only take the case from the jury where not only the facts are undisputed, but where only one set of inferences can be drawn from those facts, and those inferences lead to only one conclusion. Gardner v. Railroad Co., 150 U. S. 349, 361, 14 Sup. Ct. 140. It is quite clear in this case that the question whether or not the case was a proper one for requiring the defendant to establish rules for the government of its employés in drawing salt from this bin when men were engaged inside of it, was one as to which reasonable men might differ. The rule is well settled that it is the duty of all persons and corporations having many men in their employ in the same business to make and promulgate rules which, if observed, will afford protection to the employés. This is the more necessary where the manner of doing business is such that the danger or safety of an employé at any given time depends upon the way in which some other employé is engaged at the same time. In such a case, where the action of one employé may make that dangerous which, if he took no action, would be safe, it is undoubtedly the duty of the common employer to make such rules as will enable the person whose safety is put at risk to be advised of the danger, and to avoid it. Abel v. President, etc., 103 N. Y. 581, 9 N. E. 325; Slater v. Jewett, 85 N. Y. 61; McGovern v. Railroad Co., 123 N. Y. 281, 289, 25 N. E. 373. To be sure, the company is only required to make rules to guard against such accidents and casualties as may reason-

ably be foreseen, and it is not bound to use more than reasonable care in deciding whether rules are necessary. Berrigan v. Railroad Co., 131 N. Y. 582, 30 N. E. 57. In every case its duty is performed by the exercise of reasonable care in deciding, in the first place, whether rules are necessary, and, in the second place, in making such rules as appear to be sufficient. But the question in either case may be for the jury whether, in the first place, the company took reasonable care to conclude whether rules were necessary, or, in the second place, if they were, whether the rules thus made were proper for the purpose for which they were intended. When the question is whether the case was one in which rules ought to have been made, the fact that other people or corporations engaged in the same business had or had not found it necessary to make rules upon that subject, is one which might well be considered. But the fact that no such rules had been made is not conclusive against the necessity of making them. It is simply a fact to be considered. Where the business is complicated, the circumstances are those which do not occur often, and the danger is not serious, it may well be that the fact that other people engaged in the same business have found no necessity for making rules for the particular case may be almost conclusive that such rules are not necessary. But where the circumstances are such that any person can see what might happen in a given case, and the danger is plain and obvious, the jurors might be at liberty to infer that rules to protect the employé were necessary, although they had no experience in the particular business, and although there was no evidence that other corporations in the same business had made rules for such cases. Morgan v. Iron Co., 133 N. Y. 666, 31 N. E. 234. In the case at bar, it is evident that if a man were in the bin at work, standing upon the salt, he might very easily be engulfed so as to be unable to extricate himself, if the chutes below were suddenly opened. Starting from that fact, which is undisputed, the inference might very well be drawn that a well-devised set of rules, giving warning to the men who were in the bin, or forbidding the drawing off of salt when any one was in the bin, would conduce greatly to the safety of the men who had occasion to be there. There is nothing in the evidence which would lead the jury to believe that such a rule was impossible, or even difficult, to enforce; and it is quite clear that such a rule might be of great use in insuring the safety of the men who had occasion to be in the bin. For these reasons I think that it was proper for the jury to consider, upon the question of the defendant's negligence, the failure to make rules for the government of its employés in this regard.

The question of the contributory negligence of the plaintiff's intestate is a very serious one. There was absolutely no evidence as to what occurred after the boy went into the bin the second time. All that is positively known is that the salt was set in motion after that time by drawing it off from the bottom, and that, in process of time, his dead body made its appearance at one of the lower chutes. It was presented head first. The arms were crossed under the forehead, and the eyes were closed. There were upon the body a few abrasions, but nothing very serious. It appeared from the testimony of certain witnesses that the salt was so heavy that a body going into the salt in a certain position could not be turned, but must come out of the bin in the same position. That is, if a man went into the salt with his feet down, he necessarily would come to the bottom chute in the same position, and so, if he went into the salt with head downwards, his head would first make its appearance at the lower chute. The defendant argues from this that it must necessarily have been the case that the plaintiff's intestate lay down upon the salt, and went to sleep, with his head towards the place from which the salt discharged, and so was drawn head first into the chute. If that fact appeared, it would be necessarily established that he was guilty of contributory negligence, but I cannot see that any such fact can fairly be inferred from the testimony. It appeared in the evidence that across the bin, at some distance below the top of the salt, were heavy timbers, extending from one side to the other, with narrow spaces between them. It might very well be that the body of the boy, caught upon one of these timbers, was turned so as to come head first to the chute. It might be that he fell in some way in the bin, and thus was drawn into the chute head first. All that can surely be said is that, having been in the bin, his body was presented head downwards at the

bottom of the chute. Can it be said from that fact alone that the intestate was guilty of contributory negligence, or that there was a failure to prove his freedom from it? Of course, there is no presumption one way or the other, but the plaintiff is bound to prove the absence of contributory negligence, or he fails in his case. Weston v. City of Troy, supra. The care which is required of a person in each case is that which might reasonably be expected from a person of his age and experience under the same circumstances, and with the knowledge which he had upon the particular subject. In this case the boy who was killed was between 14 and 15 years old. He was mature for his age. He was wholly unacquainted, so far as appears, with the duty which he was set to do in this bin, and he had not been informed as to the extent or nature of the dangers which he might incur therein, if, indeed, it can be said that he knew there was any danger there. There can be no presumption, in the absence of evidence, that he did anything that he ought not to have done, and it may fairly be presumed that he took such reasonable care for his safety as one of his age, under those circumstances, would be likely to do. In all these cases the presumption may be made that every man is desirous of preserving his life and keeping his body from harm. Morrison v. Railroad Co., 63 N. Y. 643. Whether he went to sleep or not was a matter which was to be inferred, if at all, by the jury. They might take into consideration all the presumptions, as well as what appeared from the facts, and then it was for them to say upon the whole case, I think, whether the plaintiff had shown that the intestate had used proper care in looking out for his own safety. For these reasons I am of the opinion that upon the whole it was not error to submit the case to the jury, and that a new trial must be denied.

Argued before DWIGHT, P. J., and LEWIS and BRADLEY, JJ.

Satterlee & Taylor and Strang & Doty, for appellant.

F. A. Mann, for respondent.

PER CURIAM. Judgment and order affirmed on opinion of RUMSEY, J., at circuit.

---

### JOHNSON v. BRASINGTON et al.

(Supreme Court, General Term, Fifth Department. April 12, 1895.)

WILLS—CONSTRUCTION—HEIRS.
  Testator devised property to his son S. for life, and directed that at his death the property should be equally divided among the "children or heirs" of said S. in equal shares. *Held*, that the word "heirs" was used as equivalent of "children," and not technically.

Appeal from special term, Niagara county.

Action by Mary E. Johnson against James Brasington and others. From a judgment sustaining a demurrer to the complaint and dismissing the complaint, and directing the cancellation of a lis pendens, plaintiff appeals. Affirmed.

The opinion of Mr. Justice GREEN at special term is as follows:
  February 27, 1874, Samuel Brasington died in the town of Porter in the county of Niagara, leaving a last will and testament made on the day previous, which will was duly admitted to probate in said county. He left, him surviving, Betsey Brasington, his second wife, and Stephen L. Brasington, a son by his wife Cassandra Knapp Brasington. His first wife died in the month of July, 1854, nearly 20 years before the execution of said will. To his second wife, Betsey, he gives and bequeaths all of the personal property of every name, nature, and kind absolutely, and also all of his real estate of every name, nature, and kind, for and during the full term of her natural life, to be used by her as she thinks best and for her comfort, to do with the